**Opinion issued December 15, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00378-CV**

———————————

**JETALL COMPANIES, INC., 1001 WL LLC, GALLERIA LOOP NOTE HOLDER LLC, GALLERIA 2425 OWNER LLC, BDFI LLC, ALI CHOUDHRI, BRAD PARKER, AND AZEEMAH ZAHEER, Appellants**

**V.**

**SONDER USA INC., Appellee**

———————————

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-09675**

———————————

**MEMORANDUM OPINION ON REHEARING**

Appellee Sonder USA Inc. has moved for rehearing of our August 30, 2022

opinion and judgment. We deny the motion for rehearing but withdraw our August

30, 2022 opinion and judgment. We issue this opinion and judgment in their stead. Our disposition remains unchanged.

This dispute concerns five Houston commercial property leases. Sonder filed suit against four entities—Jetall Companies, Inc., 1001 WL LLC, Galleria 2425 Owner LLC, and BDFI LLC (collectively, "the Landlords")[1]—and three individuals—Ali Choudhri, Brad Parker, and Azeemah Zaheer (collectively, "the Individual Defendants")—and asserted claims for declaratory relief, fraud, breach of contract, conversion, and civil conspiracy. The Landlords initiated arbitration proceedings and moved the trial court to compel arbitration and stay litigation of Sonder's claims. Choudhri and Parker filed motions to dismiss Sonder's claims under the Texas Citizens Participation Act ("TCPA"). *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.009. The trial court denied the motion to compel arbitration and the TCPA motions to dismiss. The Landlords, Choudhri, and Parker all filed notices of appeal.

In three issues, the Landlords argue that the trial court erred by denying their motion to compel arbitration because (1) the parties contractually delegated gateway issues of substantive arbitrability to the arbitrator; (2) the Landlords proved the

---

[1]     Sonder also sued Galleria Loop Note Holder LLC, the successor in interest to 1001 WL LLC. Galleria Loop Note Holder is not a signatory to any lease involved in this case, and the appellate record does not reflect that it initiated an arbitration proceeding against Sonder. On appeal, the parties represent that Galleria Loop Note Holder has not appeared in the trial court or in this Court.

existence of a valid agreement to arbitrate and that Sonder's claims fall within the scope of the arbitration agreement; and (3) the Landlords did not waive their right to arbitration by participating in Sonder's lawsuit.

Also in three issues, Choudhri and Parker argue that the trial court erred in denying their TCPA motions to dismiss because (1) they demonstrated that the TCPA applies to Sonder's claims against them; (2) Sonder's claims do not fall within any applicable exemption to the TCPA; and (3) Sonder did not produce prima facie evidence of its claims.

We affirm in part and reverse and remand in part.

**Background**

Sonder is a hospitality company operating throughout the United States and worldwide. It enters into multiyear leases with real property owners and provides apartment-style short-term and extended stays in fully furnished units for its clients.

In 2018 and 2019, Sonder entered into various leases that are the subject of this lawsuit. Sonder and Jetall entered into a lease for 1123 Bartlett Street. Sonder and Galleria 2425 Owner LLC were parties to two leases for 2425 West Loop South. Sonder and BDFI LLC were parties to the lease for 50 Briar Hollow Lane. Finally, Sonder and 1001 WL LLC were parties to the lease for 1001 West Loop South. According to Sonder's original petition, none of the properties was "equipped to accommodate residential guests" at the time of the leases, but the Landlords and the

3

Individual Defendants "led Sonder to believe that they could—and would—convert mid-rise office space into trendy, luxury accommodations, in keeping with Sonder's brand."

All of the leases contained the same key provisions concerning the lease term, the use of the property, and the parties' respective responsibilities under the leases. The lease between Sonder and Jetall, for example, was for a fifteen-year term and provided that the sole permitted use of the property was "[t]o operate as an apartment/hotel concept offering rental accommodations, consistent with a reputable hotel/class A apartment." Jetall, as landlord, agreed to provide a "tenant improvement allowance plus plumbing rough in" or it agreed, at its option, to "'turnkey' build out the Premises" for Sonder. Jetall agreed to work with Sonder to "allocate the correct number of 1 room, 2 room and 3 room units along with required amenity space." Sonder agreed to pay a monthly "base rental" amount to Jetall, and this amount increased throughout the duration of the lease. Sonder also paid a $20,000 security deposit. Each lease that Sonder signed contained similar terms and required Sonder to pay a comparable security deposit. Parker signed the leases as "Authorized Representative" for Jetall, 1001 WL, and BDFI. Zaheer signed the lease as Galleria 2425 Owner's "Authorized Agent." Choudhri did not sign any of the leases in any capacity.

4

Each lease contained an identical "Mediation/Arbitration" provision stating, "In the event of any controversy or claim arising out of or relating to this agreement, or a breach thereof, the parties hereto shall first attempt to settle the dispute by the Mediation/Arbitration Agreement" attached as an exhibit to the lease. The attached "Mediation/Arbitration Agreement" set out procedures for negotiations concerning disputes under the lease. The parties agreed:

> If Landlord fails, or is alleged by Tenant to have failed to perform any Landlord obligation described in the Lease, and such failure continues for thirty (30) days after Landlord's receipt of a written notice of such failure from Tenant (detailing the amounts and the grounds of such claim[)], Landlord and Tenant will engage in face-to-face negotiations in an attempt to resolve any disagreements as to Tenant's rights to offset such amounts.

If the negotiations were not successful, the parties agreed to engage in non-binding mediation. The parties agreed that "[t]o the extent such dispute has not been resolved at mediation[,] Landlord and Tenant agree to attend binding arbitration to resolve Tenant's claim or cause of action to be commenced within fourteen (14) days of an impasse being called by the mediator."

The Mediation/Arbitration Agreement then provided that if the parties did not reach a settlement "within sixty days after service of a written demand for mediation, any unresolved controversy or claim shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, with specificity as follows . . . ." The agreement described specific procedures for

5

arbitrating any disputes, including the number and qualifications of arbitrators, the allowed discovery, and limitations on damages awards. An identical Mediation/Arbitration Agreement was attached to each lease.

Sonder attempted to communicate with Choudhri and Parker concerning the properties throughout 2019 and into 2020, but Choudhri and Parker were not forthcoming with information concerning the progress of construction. Sonder later discovered that the Landlords did not own one of the properties and lacked clear title to another property; the Landlords and the Individual Defendants never obtained necessary permits from the City of Houston to complete construction; no construction had occurred; and only minimal demolition at one of the four properties had begun. The Landlords never delivered furnished premises to Sonder. Sonder sent default notices to the Landlords in May 2020 and terminated the leases in June 2020.

In February 2021, Sonder sued the Landlords and the Individual Defendants.[2] Sonder sought declarations concerning whether it had rescinded or validly terminated the leases "due to fraud in the inducement, material breaches, frustration of purpose, impracticability, failure of consideration, unilateral mistake of fact, and unjust enrichment."

Sonder asserted a claim against the defendants for fraudulent inducement, alleging that they affirmatively misrepresented their ownership of two properties and

---

[2]     Zaheer did not make an appearance in the trial court.

misrepresented their ability and intent to fulfill their lease obligations. Sonder also asserted a claim for fraud by nondisclosure, alleging that the defendants made misrepresentations "that created the distinct, false impression that they possessed unclouded title" to two properties and thus had authority to enter into the leases. The defendants also made "partial disclosures" that gave the "false impression that they had the ability to complete buildouts of the Premises." Sonder further asserted a claim for common-law fraud, alleging that the defendants made representations after execution of the leases regarding their ownership of the properties, the status of plans and permits, their ability to deliver the premises, and construction progress on the properties.

Additionally, Sonder asserted a claim for breach of contract, alleging that each of the leases stated a commencement date of either March or June 2019, but the Landlords had not delivered the premises to Sonder by June 2020, nor had they "made reasonable progress towards performance of their obligations under the Leases." Sonder further alleged that the Landlords had wrongfully retained over $100,000 in security deposits for the properties. Sonder also brought a claim for civil conspiracy based on the defendants allegedly conspiring to "mislead Sonder with respect to their true intentions with respect to the Leases." The defendants allegedly "understood and agreed that Defendants would deceive and defraud Sonder and illegally convert its security deposits."

After Sonder filed suit, the Landlords initiated separate arbitration proceedings and asserted claims against Sonder in those proceedings for breach of contract, fraud, and fraud in a real estate transaction. Jetall then moved to compel arbitration and to stay the litigation under the Texas Arbitration Act. Jetall argued that the lease Sonder signed with it contained a valid arbitration clause, and Jetall filed a claim with the American Arbitration Association ("AAA") pursuant to that clause. Defendants 1001 WL, Galleria 2425 Owner, and BDFI did not file their own motions to compel arbitration, but they filed documents with the trial court purporting to join Jetall's motion to compel. Choudhri, Parker, and Zaheer did not move to compel arbitration or join Jetall's motion.

Subject to its demand for arbitration, Jetall filed an answer on the same day as its motion to compel. Jetall asserted cross claims against Sonder Canada, Inc., which had guaranteed the leases; Martin Picard, Sonder Canada's vice president of finance; and George Lee, who had owned the Bartlett Street property. Jetall asserted a breach of contract claim against Sonder and Sonder Canada. Jetall further alleged a fraudulent inducement claim against Sonder, Sonder Canada, and Picard. In addition, Jetall alleged that the Sonder defendants and Lee engaged in a civil conspiracy. Jetall also asserted a defamation claim and a tortious interference with contract claim against Lee. Jetall also asserted eight affirmative defenses to Sonder's claims against it.

Sonder opposed Jetall's motion to compel arbitration and requested that the trial court stay the arbitration proceedings initiated by the Landlords. Sonder argued that under the terms of the arbitration agreements, only certain claims by Sonder—claims concerning the Landlords' failure to perform a lease obligation—were subject to arbitration. Consequently, in Sonder's view, the Landlords were not entitled to arbitrate their own claims or Sonder's non-contractual claims. Sonder also argued that the arbitration agreements were unenforceable because the agreements lacked consideration and were substantively unconscionable. Specifically, Sonder argued that the arbitration agreements' "severe" discovery limitations and restrictions on the awardable damages rendered the agreements unconscionable. Finally, Sonder argued that Jetall had waived its right to arbitrate because it had substantially invoked the litigation process by filing cross-claims, answering Sonder's discovery requests, and serving its own discovery requests.

After a hearing, the trial court granted Sonder's motion to stay the arbitration proceedings and denied Jetall's motion to compel arbitration. The trial court did not state its reasoning.

While the motion to compel arbitration was pending, Choudhri and Parker filed separate motions to dismiss Sonder's declaratory relief and civil conspiracy claims pursuant to the TCPA. Parker agreed that he was involved with the process of obtaining construction permits from the City of Houston. Parker argued that the

9

TCPA applied to Sonder's claims against him because the claims were based on "oral and written statements regarding the permit applications made with the City of Houston," which are matters of public concern and are made in the course of permit proceedings. Therefore, he argued that Sonder's claims implicated both his right of free speech and his right to petition. Parker argued that Sonder could not establish a prima facie case for each element of its claims against him. As evidence, Parker attached his declaration. Choudhri filed a motion to dismiss that asserted the same theory but relied on Choudhri's own alleged statements as the relevant communications for purposes of the TCPA's applicability. As evidence, Choudhri attached his own declaration and Parker's declaration.

In response, Sonder argued that "neither Parker nor Choudhri demonstrated that they exercised their right to petition or right of free speech in making statements about permits," and therefore the TCPA did not apply. Sonder argued that its declaratory relief claim was not factually predicated on statements in or about permits or permit proceedings, and its civil conspiracy claim was "not tied to any protected activity or [was] tied to underlying fraud claims and commercial speech that are exempt from the TCPA." Sonder also argued that its claims were statutorily exempt from the TCPA because they were based on a common-law fraud claim and because they fell within the commercial speech exemption. Sonder further argued

10

that, even if the TCPA applied, Sonder could establish a prima facie case on each element of its claims.

The trial court denied Parker's and Choudhri's TCPA motions to dismiss. The court did not state its reasoning.

The Landlords, Choudhri, and Parker all filed notices of interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE §§ 51.014(a)(12) (authorizing interlocutory appeal from order denying TCPA motion to dismiss), 171.098(a)(1) (authorizing appeal from order denying application to compel arbitration).

## THE LANDLORDS' APPEAL

### Motion to Compel Arbitration

The Landlords raise three issues relating to the trial court's denial of their motion to compel arbitration. In their first issue, the Landlords argue that the parties delegated gateway issues of substantive arbitrability to the arbitrator and therefore the trial court erred by considering challenges to the enforceability, validity, or scope of the arbitration agreement. In their second issue, the Landlords argue that the trial court erred by denying their motion to compel arbitration because they proved the existence of a valid arbitration agreement and that the asserted claims fall within the scope of the arbitration clause. Finally, in their third issue, the Landlords argue that they have not waived their right to arbitration by participating in the lawsuit.

11

### A. Standard of Review

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021); *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles. *Taylor Morrison of Tex., Inc. v. Skufca*, 650 S.W.3d 660, 676 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We defer to the trial court's factual determinations if they are supported by the evidence, but we review the court's legal rulings de novo. *Henry*, 551 S.W.3d at 115. A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Skufca*, 650 S.W.3d at 676.

The validity and enforceability of an arbitration agreement is a question of law that we review de novo. *See In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding) (per curiam); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Additionally, whether disputed claims fall within the scope of an arbitration agreement is a question of law that we review de novo. *Wagner*, 627 S.W.3d at 283; *Henry*, 551 S.W.3d at 115. Whether a party waived its right to arbitrate is also a question of law that we review de novo. *Henry*, 551 S.W.3d at 115; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015).

*B.* *Analysis*

### 1. Relevant facts

In February 2021, Sonder filed suit in district court against the Landlords, Galleria Loop Note Holder, and the Individual Defendants. It asserted multiple claims, including claims for declaratory relief, fraudulent inducement, fraud by nondisclosure, common law fraud, breach of contract, conversion, and civil conspiracy. Each of the Landlords responded by initiating a separate arbitration provision with the American Arbitration Association in February and March 2021.

In the trial court, Jetall moved to compel arbitration in April 2021, arguing that the arbitration provision contained in its lease with Sonder required arbitration of Sonder's claims. The other Landlords filed documents with the trial court adopting or joining this motion. On the same day as it moved to compel arbitration, Jetall filed an answer, subject to its demand for arbitration, and asserted third-party claims against Sonder Canada, Picard, and Lee. It also asserted counterclaims for breach of contract, fraud, and civil conspiracy against Sonder.

Sonder opposed the motion to compel and moved to stay the arbitration proceedings. Sonder argued that the Landlords could not arbitrate any of their claims against it because the arbitration agreement contained in the leases only covered Sonder's claims arising when a Landlord "fail[s] to perform any Landlord obligation described in the Lease." It also argued that the arbitration agreement was

unenforceable because it lacked consideration and was substantively unconscionable. Specifically, Sonder argued that the arbitration agreement was unconscionable because it significantly limited both discovery and Sonder's ability to seek exemplary damages. Finally, Sonder also argued that Jetall had waived its right to arbitration by substantially invoking the judicial process, noting that Jetall had filed cross-claims and counterclaims, answered Sonder's requests for disclosure, and served its own discovery requests.

The leases contained the following arbitration clause: "In the event of any controversy or claim arising out of or relating to this agreement, or a breach thereof, the parties hereto shall first attempt to settle the dispute by the Mediation/Arbitration Agreement, attached as Exhibit G [or Exhibit E in the Jetall lease] to this lease." The attached Mediation/Arbitration Agreement stated:

1)    If Landlord fails, or is alleged by Tenant to have failed to perform any Landlord obligation described in the Lease, and such failure continues for thirty (30) days after Landlord's receipt of a written notice of such failure from Tenant (detailing the amounts and the grounds of such claim[)], Landlord and Tenant will engage in face-to-face negotiations in an attempt to resolve any disagreements as to Tenant's rights to offset such amounts. The parties shall participate in good faith in such negotiations. Each party shall be represented in the negotiation by a person with authority to settle the dispute. If the parties shall fail to negotiate a resolution within such ten (10) day period, then the parties shall choose a mutually agreeable third party neutral, who shall mediate the dispute between the parties during the fifteen (15) day period following the expiration of such ten (10) day period. The mediator shall be a person qualified under the Texas Alternative Dispute Resolution Procedures Act mutually

14

acceptable to Landlord and Tenant. Mediation shall be non-binding and shall be confidential. The parties shall refrain from court proceedings during the mediation process insofar as they can do so without prejudicing their legal rights. The parties shall participate in good faith and shall follow the procedures for mediation as suggested by the mediator. All expenses of mediation except expenses of the individual parties, shall be shared equally by the parties. Each party shall be represented in the mediation by a person with authority to settle the dispute. To the extent such dispute has not been resolved at mediation[,] Landlord and Tenant agree to attend binding arbitration to resolve Tenant's claim or cause of action to be commenced within fourteen (14) days of an impasse being called by the mediator.

2) If settlement is not reached within sixty days after service of a written demand for mediation, any unresolved controversy or claim shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, with specificity as follows . . . .

Eight subparts of section two of the Mediation/Arbitration Agreement set out procedural requirements, such as the number of arbitrators, the qualifications of the arbitrators, discovery limitations, and a prohibition on the recovery of exemplary and consequential damages.

At the hearing on the parties' competing motions concerning arbitration, the Landlords argued that because the Mediation/Arbitration Agreement incorporated the AAA's Commercial Arbitration Rules, all questions concerning arbitrability, validity, and enforceability were questions for the arbitrator, not the court. Sonder agreed that questions of arbitrability could be delegated to the arbitrator, but only if the parties did so clearly and unmistakably, which they did not do in these leases

15

because the arbitration agreement applied only to certain breach of lease claims brought by Sonder. It argued that the arbitration provision in these leases was narrowly drafted to address a small subset of claims, and most of the claims asserted by the parties in this litigation did not fall within the scope of the provision.

### 2.    Gateway questions of arbitrability

A party seeking to compel arbitration must establish (1) the existence of a valid arbitration agreement, and (2) that the disputed claims fall within the scope of that agreement. *Wagner*, 627 S.W.3d at 282; *Henry*, 551 S.W.3d at 115. If the party seeking to compel arbitration meets that burden, the burden shifts to the party opposing arbitration to prove an affirmative defense to enforcement of the arbitration provision. *Henry*, 551 S.W.3d at 115. Parties may expressly exclude certain claims from the scope of an arbitration agreement. *Wagner*, 627 S.W.3d at 283.

Arbitration agreements are matters of contract and are on equal footing with other contracts. *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). If the circumstances would render any contract unenforceable under Texas law, they are appropriate to invalidate an arbitration agreement as well. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *see Rent-A-Ctr.*, 561 U.S. at 68 (stating that, like other contracts, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability"). Because arbitration agreements are severable from the larger contract in which they appear,

questions about the validity of that larger contract are determined by the arbitrator. *Skufca*, 650 S.W.3d at 673 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)). If, however, a party challenges the validity of the arbitration agreement—as opposed to the validity of the larger contract—the trial court must consider the challenge to the arbitration agreement before ordering the parties to arbitration. *Id.* at 674; *see Rent-A-Ctr.*, 561 U.S. at 71.

Whether parties have agreed to arbitrate a dispute is a "gateway matter ordinarily committed to the trial court," but parties can "agree to arbitrate arbitrability." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018); *see RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) ("[A] contractual agreement to submit the arbitrability question to an arbitrator is valid and must be treated like any other arbitral agreement."). Threshold questions of arbitrability that are typically ruled upon by trial courts—but may be contractually delegated to the arbitrator—include the validity and enforceability of the arbitration agreement and whether a claim or dispute is encompassed within the agreement. *Berry Y&V Fabricators, LLC v. Bambace*, 604 S.W.3d 482, 486 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied).

Because arbitration is a matter of contract, "that which the parties agree must be arbitrated shall be arbitrated." *Jody James Farms*, 547 S.W.3d at 631; *see First*

17

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."). Arbitration clauses providing that the arbitrator will decide gateway questions such as arbitrability of the dispute "are an established feature of arbitration law." *RSL Funding*, 569 S.W.3d at 120; *Skufca*, 650 S.W.3d at 677 (stating that if agreement includes delegation clause, trial court must compel arbitration so arbitrator may decide gateway issues parties have agreed to arbitrate).

Parties may therefore delegate threshold questions of arbitrability to the arbitrator as long as the parties' agreement does so by "clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Skufca*, 650 S.W.3d at 678; *Berry Y&V Fabricators*, 604 S.W.3d at 486. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 531. When an arbitration agreement contains a delegation clause, courts have no discretion but to compel arbitration unless a party challenges the validity of the delegation clause itself on legal or public policy grounds.[3] *RSL Funding*, 569

---

[3]    Here, Sonder makes no challenge to the delegation provision in the Mediation/Arbitration Agreement specifically beyond arguing that reference to the AAA's Commercial Arbitration Rules is not "clear and unmistakable" evidence of intent to delegate questions of arbitrability because the arbitration provision in the leases is drafted narrowly, not broadly.

18

S.W.3d at 121; *Skufca*, 650 S.W.3d at 677; *see also Rent-A-Ctr.*, 561 U.S. at 72 (stating that unless party specifically challenges delegation provision, courts must treat provision as valid and enforceable, leaving questions about validity of arbitration agreement as whole to arbitrator).

This Court has acknowledged that one method by which parties can contractually provide that the arbitrator will resolve questions of arbitrability is "express language" in the contract. *Darling Homes of Tex., LLC v. Khoury*, No. 01-20-00395-CV, 2021 WL 1918772, at *8 (Tex. App.—Houston [1st Dist.] May 13, 2021, no pet.) (mem. op.). Parties may also delegate questions of arbitrability by "expressly adopting rules, such as the AAA Commercial Arbitration Rules, that unmistakably delegate such issues to the arbitrator." *Id.*; *Weitzel v. Coon*, No. 01-19-00015-CV, 2019 WL 3418515, at *3 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.) ("The express incorporation of rules that empower the arbitrator to determine arbitrability, such as the AAA Commercial Arbitration Rules, is clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues."); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (same).

Rule 1(a) of the AAA's Commercial Arbitration Rules provides that parties "shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration

Association . . . under its Commercial Arbitration Rules" or if the parties provide "for arbitration by the AAA of a domestic commercial dispute without specifying particular rules." Commercial Arbitration Rules and Mediation Procedures R-1(a) (effective October 1, 2013), *available at* www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf. Rule 7(a) provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Commercial Arbitration Rules and Mediation Procedures R-7(a).

As Sonder points out, state and federal courts, including this Court, have also held that, under some circumstances, express incorporation of the AAA's Commercial Arbitration Rules is not clear and unmistakable evidence of intent to delegate gateway questions of arbitrability to the arbitrator. *See, e.g.*, *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014); *Katz v. Feinberg*, 290 F.3d 95, 97 (2d Cir. 2002) (per curiam); *ALLCAPCORP, Ltd. v. Sloan*, No. 05-20-00200-CV, 2020 WL 6054339, at *3–5 (Tex. App.—Dallas Oct. 14, 2020, no pet.) (mem. op.); *Lucchese Boot Co. v. Rodriguez*, 473 S.W.3d 373, 381–84 (Tex. App.—El Paso 2015, no pet.); *Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 39–42 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In each of these cases, although the arbitration provision incorporated either

the AAA's Commercial Arbitration Rules or the comparable rules of another arbitral association, other language in the arbitration provision cast doubt on whether the parties intended to have the arbitrator decide gateway questions of arbitrability.

For example, in *Burlington Resources Oil & Gas*, the arbitration agreement at issue "generally provide[d]" that the arbitration proceeding "shall be conducted in accordance with the Commercial Arbitration Rules of the [AAA], unless otherwise specified herein," thus expressly incorporating those rules into the agreement. *See* 249 S.W.3d at 40. However, the agreement also provided that a particular exhibit to the agreement identified the specific disputes the parties "have identified for submission to binding arbitration pursuant to the procedures set forth hereafter"; that the disputes listed on the exhibit "constitute the only items that will be subjected to arbitration"; the "agreement to arbitrate applies only to the audit disputes identified" on the exhibit; and the arbitration agreement shall control in the event of a conflict between the agreement and the Commercial Arbitration Rules. *Id.* at 37–38.

A panel of this Court concluded that because the arbitration agreement applied only to disputes listed on a specific exhibit, and thus the agreement was "of very narrow scope," there was "no clear and unmistakable statement in the Arbitration Agreement that matters of arbitrability will be submitted to an arbitrator." *Id.* at 40. Considering the specific language of the agreement before the Court, we held that "the agreement's mere reference to the AAA's rules does not provide clear and

unmistakable evidence of the parties' delegation of issues of arbitrability to an arbitrator." *Id.* at 41.

Similarly, the Second Circuit has held that "clear and unmistakable" evidence exists when "a broad arbitration clause expressly commits all disputes to arbitration," reasoning that "*all* disputes necessarily includes disputes as to arbitrability." *NASDAQ OMX Grp.*, 770 F.3d at 1031; *see Katz*, 290 F.3d at 97 (noting that court had previously held that "a broadly worded arbitration clause committing resolution of all disputes to arbitration satisfied this 'clear and unmistakable' standard"). However, the court did not reach the same conclusion in situations where "a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute." *NASDAQ OMX Grp.*, 770 F.3d at 1031.

In *NASDAQ OMX*, the arbitration agreement provided, "*Except as may be provided in the NASDAQ OMX Requirements*, all claims, disputes, controversies and other matters in question between the Parties to this Agreement . . . shall be settled by final and binding arbitration." *Id.* The court concluded that the italicized qualifying language carved out a class of claims from arbitration, and there was therefore an ambiguity concerning the parties' intent to have the arbitrator decide questions of arbitrability, "which would include whether a dispute falls within or outside the scope of the qualifier." *Id.* As a result, the court was unable to conclude that the parties "clearly and unmistakably committed questions of arbitrability to an

arbitrator rather than the court." *Id.* at 1032; *see also Katz*, 290 F.3d at 97 (concluding that parties did not clearly and unmistakably delegate questions of arbitrability to arbitrator when agreement included broad arbitration provision but also specifically provided that certain class of decisions was to be made by independent accountant and was not subject to judicial or arbitral review).

In each of the cases cited by Sonder, the arbitration agreements incorporated the rules of the AAA or another arbitral association, but specifically stated that the agreement applied only to a certain class of claims, specifically carved out a class of claims to which the agreement did not apply, or both. *See NASDAQ OMX*, 770 F.3d at 1031–32; *Katz*, 290 F.3d at 97; *Burlington Res. Oil & Gas Co.*, 249 S.W.3d at 39–42; *see also ALLCAPCORP Ltd.*, 2020 WL 6054339, at *1 (stating that if "any dispute arises out of the service provided by the [independent project director] pursuant to this Agreement," dispute shall be submitted to binding arbitration, but also stating that claims for breaches of certain covenants in agreement were not subject to mandatory arbitration); *Lucchese Boot Co.*, 473 S.W.3d at 380–81 (providing that, as condition of employment, employee must agree to submit "any Covered Dispute" to binding arbitration, listing certain claims as "Covered Disputes," listing certain claims as "Claims Not Covered," and stating that neither employee nor company could submit claims listed in "Claims Not Covered" section of agreement to arbitration); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d

23

76, 81 (Del. 2006) (concluding that no clear and unmistakable evidence of intent existed when company agreement had broad provision requiring arbitration of any controversy arising out of or relating to agreement but also provided that nonbreaching members of company could obtain injunctive relief and specific performance in court).

Here, the parties dispute whether the Mediation/Arbitration Agreement in the leases is broad or if it is limited to a specific class of claims, namely, claims that the Landlords have "fail[ed], or is alleged by [Sonder] to have failed to perform any Landlord obligation described in the Lease." The arbitration clause in the body of the lease is broad, stating that in the event of "any controversy or claim arising out of or relating to this agreement, or a breach thereof," the parties shall attempt to settle the dispute through the Mediation/Arbitration Agreement attached as an exhibit to the leases.

Paragraph 1 of the Mediation/Arbitration Agreement sets out a dispute resolution procedure "[i]f Landlord fails, or is alleged by Tenant to have failed to perform any Landlord obligation described in the Lease, and such failure continues for thirty (30) days after Landlord's receipt of a written notice of such failure from Tenant." The parties must first attempt face-to-face negotiation of the dispute, then the parties must submit to non-binding mediation if the face-to-face negotiation is unsuccessful, and then "[t]o the extent such dispute has not been resolved at

24

mediation," the parties must "resolve Tenant's claim or cause of action" through binding arbitration. Paragraph 2 of the Mediation/Arbitration Agreement states: "If settlement is not reached within sixty days after service of a written demand for mediation, any unresolved controversy or claim shall be settled by arbitration administered by the [AAA] under its Commercial Arbitration Rules, with specificity as follows . . . ." The agreement then set out several specific procedural requirements and limitations to be followed during arbitration.

Sonder urges us to read the Mediation/Arbitration Agreement as providing that only claims by Sonder that the Landlords have failed to perform "any Landlord obligation described in the Lease" are to be submitted to arbitration. All other claims—including claims by the Landlords that Sonder breached the lease and any noncontractual claims raised by any party—are to be resolved in the courts. We do not read the Mediation/Arbitration Agreement to be as narrow and limited as Sonder suggests.

Unlike the arbitration agreements at issue in *Burlington Resources* and *Lucchese Boot Co.*, the Mediation/Arbitration Agreement here does not include language stating that *only* claims by Sonder that the Landlords failed to perform their lease obligations must go to arbitration and that all other claims must not be submitted to arbitration. Instead, the Mediation/Arbitration Agreement sets out a specific three-step process for resolving claims by Sonder that the Landlords failed

to perform their lease obligations: the parties must first negotiate face-to-face, then they must proceed to non-binding mediation, and then they must proceed to binding arbitration. No language in the Mediation/Arbitration Agreement states that other claims need not follow this procedure; the agreement states only that Sonder's claims that the Landlords breached their lease obligations *must* follow this procedure.

Paragraph 1 of the Mediation/Arbitration Agreement does not limit the broad language of the arbitration clause contained in the body of the lease providing that "any controversy or claim arising out of or relating to" the lease shall be resolved according to the Mediation/Arbitration Agreement or the language in Paragraph 2 of that agreement stating that, if a settlement has not been reached within sixty days of service of a written mediation demand, "any unresolved controversy or claim" shall be settled by arbitration with the AAA under the Commercial Arbitration Rules. We conclude that the Mediation/Arbitration Agreement is broad and does not expressly except certain classes of claims.

Because the arbitration provisions in the leases at issue in this case are broad and do not expressly carve out certain claims, we conclude that the language in the provision expressly incorporating the AAA's Commercial Arbitration Rules clearly and unmistakably delegates gateway issues of arbitrability to the arbitrator. *See Darling Homes of Tex.*, 2021 WL 1918772, at *8; *Weitzel*, 2019 WL 3418515, at *3. Gateway issues of arbitrability include enforceability of the arbitration provision,

26

scope of the provision, and questions of unconscionability, which relate to the validity of the provision. *See Berry Y&V Fabricators*, 604 S.W.3d at 486 (stating that parties may delegate to arbitrator gateway questions of arbitrability, including questions of validity or enforceability of arbitration agreement); *Darling Homes of Tex.*, 2021 WL 1918772, at *8 (stating that questions of unconscionability are "gateway issues of enforceability" that were delegated to arbitrator by express language of arbitration provision); *Dow Roofing Sys., LLC v. Great Comm'n Baptist Church*, No. 02-16-00395-CV, 2017 WL 3298264, at *3 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.) (stating that parties can agree to arbitrate questions concerning validity of arbitration agreement, including asserted defense that arbitration agreement is unconscionable).

We further hold that, to the extent the trial court denied the Landlords' motion to compel arbitration on the basis that the claims raised did not fall within the scope of the arbitration provisions or that the provisions are not enforceable because they are unconscionable, these are gateway matters that were delegated to, and should have been heard by, the arbitrator. The trial court therefore erred by considering these issues.

### 3. Waiver

#### a. Express waiver

A party to an arbitration agreement may expressly or impliedly waive the right to arbitrate. *See Henry*, 551 S.W.3d at 115 (noting that waiver is affirmative defense to enforcement of arbitration provision). A party expressly waives its right to arbitrate when it affirmatively indicates that it wishes to resolve the case in the judicial forum rather than through arbitration. *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 781 (Tex. App.—El Paso 2015, no pet.) (quotations omitted); *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see Garcia v. Huerta*, 340 S.W.3d 864, 867–68, 870 (Tex. App.—San Antonio 2011, pet. denied) (stating that parties expressly waived right to arbitrate when they stated in settlement agreement that they agreed to waive any rights to enforce arbitration agreement).

Sonder argues that Jetall—along with the other Landlords through their adoption of Jetall's motion to compel arbitration—expressly waived the right to arbitrate in its motion to compel arbitration. In that motion, Jetall argued that the lease contained binding arbitration agreements. Jetall further argued that Jetall had initiated an arbitration proceeding pursuant to the lease, but Sonder objected to arbitration and maintained this lawsuit in court. Jetall stated that it "moves the Court to issue an order compelling arbitration and to stay the case or get on the record

28

Sonder's waiver of arbitration." Jetall also stated that it "wants to address the enforceability of the arbitration agreement for a judicial determination of whether Sonder has waived arbitration for all purposes and all time." In its prayer for relief, Jetall requested "[a]n [o]rder compelling arbitration and an order staying the case" and "[i]n the alternative a waiver of the arbitration provision for all purposes and for all time." In its contemporaneously filed answer, Jetall alleged that its lease with Sonder contained a binding arbitration agreement, but Sonder had objected to arbitration. Jetall stated, "As such, Sonder has either waived such agreement or is playing a game. Jetall will not permit Sonder to 'straddle-the-fence' and be able to see the outcome of its chosen forum and then demand arbitration."

Jetall sought to compel arbitration in the trial court and repeatedly asserted that a binding agreement to arbitrate covered Sonder's claims against it. It also acknowledged that Sonder had objected to arbitration and requested that the trial court, in the event it did not compel the parties to arbitrate, rule that Sonder had waived its right to arbitrate "for all purposes and all time." Jetall's alternative arguments that *Sonder* had waived arbitration are not affirmative indications that Jetall wished to resolve the claims in the judicial forum rather than in arbitration. *See Hogg*, 480 S.W.3d at 781; *Okorafor*, 295 S.W.3d at 39. We therefore hold that Jetall—and the other Landlords, by joining or adopting Jetall's motion to compel arbitration—did not expressly waive the right to arbitrate.

29

### b. Implied waiver[4]

To establish implied waiver, the party opposing arbitration has the burden to prove that (1) the party seeking to compel arbitration substantially invoked the judicial process in a manner inconsistent with the claimed right to compel arbitration, and (2) the party opposing arbitration suffered actual prejudice as a result

---

[4] There is a question about whether parties can delegate issues of waiver by litigation conduct—a matter of substantive arbitrability—to the arbitrator, or whether the court must consider this issue. The Texas Supreme Court has recognized that waiver by litigation conduct "is a question of arbitrability for the courts to decide." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520 (Tex. 2015); *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008). In *Perry Homes*, the supreme court reasoned that because waiver by litigation conduct involves conduct in court, "the court is obviously in a better position to decide whether [the conduct] amounts to waiver," and parties "would expect the court to decide whether one party's conduct before the court waived the right to arbitrate." *See* 258 S.W.3d at 588 (quoting *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 464 (5th Cir. 2004)). Neither *G.T. Leach Builders* nor *Perry Homes*, however, concerned whether the parties had clearly and unmistakably agreed to delegate substantive questions of arbitrability to the arbitrators. In an unpublished decision, the Southern District of Texas held that a valid delegation clause does not automatically delegate *all* arbitrability decisions to an arbitrator, and courts may still determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Qazi v. Stage Stores, Inc.*, No. 4:18-CV-0780, 2020 WL 1321538, at *5 (S.D. Tex. Mar. 17, 2020) (mem. op. and order) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Waiver by litigation conduct is an "external legal constraint" that parties would expect the court to decide, and this issue is therefore presumptively for the court. *Id.* The parties may delegate this issue to the arbitrator, but the delegation clause in the arbitration agreement must contain clear and unmistakable evidence "of the parties' intent to arbitrate this issue specifically." *Id.* If the arbitration agreement does not mention waiver at all, the issue has not been clearly and unmistakably delegated to the arbitrator. *Id.* Here, neither the arbitration provision generally nor the delegation clause specifically mentions who is to decide the issue of waiver by litigation conduct. We therefore conclude that the parties did not clearly and unmistakably delegate this issue of substantive arbitrability to the arbitrator, and the trial court properly considered this issue.

of the inconsistent conduct. *Id.* at 116; *G.T. Leach Builders*, 458 S.W.3d at 511–12.

Whether a party has substantially invoked the judicial process is a fact-intensive

inquiry, and we consider "a wide variety of factors" and look to the totality of the

circumstances. *Henry*, 551 S.W.3d at 116; *G.T. Leach Builders*, 458 S.W.3d at 512.

Factors that courts consider in this analysis include:

- how long the party moving to compel arbitration waited to do so;

- the reasons for the movant's delay;

- whether and when the movant knew of the arbitration agreement during the period of delay;

- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

- whether the movant requested the court to dispose of claims on the merits;

- whether the movant asserted affirmative claims for relief in court;

- the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction);

- the amount of time and expense the parties have committed to the litigation;

- whether the discovery conducted would be unavailable or useful in arbitration;

- whether activity in court would be duplicated in arbitration; and

- when the case was to be tried.

*G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes v. Cull*, 258 S.W.3d 580,

590–91 (Tex. 2008). "[A]ll these factors are rarely presented in a single case." *Perry*

*Homes*, 258 S.W.3d at 591. The Texas Supreme Court has "declined to conclude

31

that the right to arbitrate was waived in all but the most unequivocal of circumstances." *Henry*, 551 S.W.3d at 116. "Merely taking part in litigation" is "not enough" to waive the right to compel arbitration. *G.T. Leach Builders*, 458 S.W.3d at 512. "Due to the strong presumption against waiver of arbitration," the hurdle of establishing waiver by litigation conduct "is a high one." *Perry Homes*, 258 S.W.3d at 590.

Here, Sonder filed suit in district court in February 2021. The Landlords initiated separate arbitration proceedings with the AAA in February and March 2021. Jetall then moved to compel arbitration on the same day that it filed its answer, April 16, 2021, approximately two months after Sonder filed suit. No trial date had been set at the time Jetall filed its motion. This is not a situation in which Jetall appeared in the litigation and allowed discovery on the merits of the asserted claims to proceed for months or years before waiting to move to compel arbitration on the eve of trial. *See G.T. Leach Builders*, 458 S.W.3d at 512 (considering how long party moving to compel arbitration waited to do so); *see also In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (orig. proceeding) (per curiam) ("[A]llowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial defeats the [Federal Arbitration Act's] goal of resolving disputes without the delay and expense of litigation.").

In the underlying court proceedings, Jetall filed an answer and counterpetition subject to its demand for arbitration. It asserted counterclaims against Sonder, including claims for breach of the lease and fraudulent inducement, and claims against three third-party defendants, including Sonder Canada—the entity that guaranteed Sonder's performance under the leases—and Martin Picard—Sonder Canada's vice president of finance. Sonder argues that Jetall acted inconsistently with the right to arbitrate by asserting affirmative claims for relief in the trial court.

Although we consider whether the party seeking to compel arbitration asserted claims for affirmative relief in the trial court, it is not a dispositive factor. *See Henry*, 551 S.W.3d at 116 (noting that whether party waived right to arbitration through litigation conduct requires examining totality of circumstances). Jetall "did not elect to resolve its disputes" with Sonder in court; instead, it sought resolution of its dispute with Sonder in arbitration and is only "in this lawsuit" because Sonder sued it. *See G.T. Leach Builders*, 458 S.W.3d at 512–13. Jetall asserted third-party claims against parties not already in the litigation, but it also asserted compulsory counterclaims against Sonder, including claims that Sonder—and its corporate guarantor—breached and fraudulently induced the same lease that formed the basis of Sonder's suit. *See* TEX. R. CIV. P. 97(a) (defining compulsory counterclaims); *G.T. Leach Builders*, 458 S.W.3d at 513 (noting that under rules of civil procedure, defendant was required to file compulsory counterclaim after being sued or it risked

33

losing right to assert counterclaim); *Hogg*, 480 S.W.3d at 784 (noting that filing defensive pleadings, including mandatory or compulsory counterclaims, does not necessarily waive arbitration); *see also RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 431 (Tex. 2016) (stating that defendant's litigation conduct with respect to dispute with third-party with which it did not have arbitration agreement was not relevant to whether defendant waived arbitration right with plaintiffs); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding) (declining to find waiver by judicial conduct when defendant asserted cross-actions for indemnity in separate suit and pursued injunctive relief relating to that separate suit in underlying suit).

At the hearing before the trial court, Jetall acknowledged that it had sent written discovery requests to Sonder. Sonder represents in its appellee's brief that Jetall served it with eleven document requests and seven interrogatories, but Jetall's discovery requests are not part of the appellate record. Jetall also moved to compel responses to its discovery requests, and it sought to quash a subpoena Sonder issued to its former chief operating officer. Although Jetall's discovery requests are not in the appellate record, its motion to compel discovery suggests that its requests were related to the merits of its claim that Sonder allegedly breached the leases and were not related to issues of arbitrability.

The Mediation/Arbitration Agreement limited the types of discovery that could occur in the arbitration proceeding to depositions of "any experts who will testify in the arbitration proceeding" and any witness who is unavailable to testify at the arbitration hearing. Whether the discovery conducted in litigation would be unavailable in arbitration is a factor to consider in the waiver analysis. *See G.T. Leach*, 458 S.W.3d at 512. None of the requested discovery, however, was sought before Jetall moved to compel arbitration. *See id.* (considering how much discovery movant conducted before moving to compel arbitration, and whether that discovery related to merits of case); *Hogg*, 480 S.W.3d at 787 ("[A] key question in determining whether a party has invoked the judicial process is the type and nature of discovery that took place before the party moved to compel arbitration."); *see also In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (orig. proceeding) (per curiam) (concluding that defendant did not substantially invoke judicial process when activity was limited to filing answer and propounding one set of eighteen interrogatories and one set of nineteen requests for production and defendant moved to compel arbitration less than six months after plaintiff filed suit). There is also no evidence in the record of how much time and expense the parties had committed to the litigation in the four months in between Sonder's filing suit and the trial court's hearing on the arbitration motions. *See G.T. Leach Builders*, 458 S.W.3d at 512.

Additionally, the Landlords filed a request in the trial court for injunctive relief "to stop racial and gender discrimination by Sonder and the American Arbitration Association" in the arbitration proceedings. In this filing, the Landlords sought to establish that Sonder had attempted to ensure that the arbitrators that were chosen in the pending arbitration proceedings were white males. The Landlords also sought to establish that despite touting its commitment to diversity, the AAA's roster of arbitrators was significantly skewed towards white males. The Landlords alleged that Sonder was engaging in overt racial discrimination and the AAA was aiding Sonder in this discrimination. The Landlords sought injunctive relief restraining Sonder and the AAA "from proceeding with selection of any arbitrator from non-diverse list of neutrals"; "from striking any non-white potential arbitrator without first seeking leave of court"; and "from moving forward with the selection of any arbitrator for any case that the [Landlords] have not agreed to the arbitrator." In the alternative, if the issue could not be resolved, the Landlords sought a permanent injunction of the provision in the Mediation/Arbitration Agreement requiring use of the AAA.

Regardless of whether it was appropriate for the Landlords to seek this relief in the trial court, the Landlords requested relief related to the arbitration proceedings, not the matters occurring in the trial court. There is no indication in the appellate record that Jetall filed any pretrial motion relating to disposition of the merits of its

36

or Sonder's claims, such as a motion for summary judgment. *See id.* (considering extent of movant's engagement in pretrial matters related to merits of dispute and whether movant requested disposition on merits of claims). Jetall did not seek to compel arbitration only after receiving an adverse ruling from the trial court on the merits of the claims in the suit. *See Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 534 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("An attempt to resolve the merits and still retain the right to arbitration is clearly impermissible."); *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that party can substantially invoke judicial process by actively but unsuccessfully trying to achieve result in litigation before turning to arbitration, such as by moving for summary judgment and or otherwise seeking final resolution of dispute).

Thus, although Jetall brought claims for affirmative relief in the trial court and engaged in at least some discovery, we weigh that against the facts that Jetall moved to compel arbitration simultaneously with filing its answer and original counterpetition, Jetall did not propound discovery requests before moving to compel arbitration, and Jetall did not seek a disposition on the merits of its claims or Sonder's claims. Based on this record and considering the totality of the circumstances, we conclude that Sonder did not overcome the "strong presumption" against waiver of the right to arbitration and demonstrate that Jetall substantially

37

invoked the litigation process. *See Perry Homes*, 258 S.W.3d at 584 ("There is a strong presumption against waiver of arbitration, but it is not irrebuttable . . . ."); *see also G.T. Leach Builders*, 458 S.W.3d at 512 ("Because the law favors and encourages arbitration, 'this hurdle [of establishing waiver by litigation conduct] is a high one.'") (quoting *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 575 (Tex. 2014) (per curiam)). We therefore hold that the trial court erred by denying the Landlords' motion to compel arbitration.

We sustain the Landlords' first and third issues.

### 4. Arbitrability of claims against the Individual Defendants

In their appellate briefing, the Landlords argue that claims against the Individual Defendants—Choudhri, Parker, and Zaheer—should also be sent to arbitration. None of the Individual Defendants, however, moved to compel arbitration or joined Jetall's motion to compel. Moreover, none of the Individual Defendants are signatories to the leases containing the arbitration provision in their individual capacities, and no party argued in the trial court or presented evidence that the Individual Defendants are entitled to compel arbitration under one of the theories non-signatories may use to enforce arbitration agreements. *See, e.g.*, *G.T. Leach Builders*, 458 S.W.3d at 524 (acknowledging six theories under which non-signatories can be bound to or permitted to enforce arbitration agreement:

incorporation by reference; assumption; agency; alter ego; equitable estoppel; third-party beneficiary).

The Individual Defendants did not meet their burden to establish that, as non-signatories to the leases, they were entitled to enforce the arbitration provision in the leases. *See Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("The initial burden of the party seeking to compel arbitration—to establish the arbitration agreement's existence—includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding. The burden of showing one's status as a party or one's right to enforce, as with the overall burden of establishing the arbitration agreement's existence, is generally evidentiary.") (internal citations omitted). The trial court therefore did not err by not compelling arbitration of Sonder's claims against the Individual Defendants.

## CHOUDHRI'S AND PARKER'S APPEAL

### TCPA Motion to Dismiss

Choudhri and Parker appeal the trial court's order denying their motions to dismiss Sonder's declaratory relief and civil conspiracy claims under the TCPA. In three issues, they argue that the TCPA applies to both claims; Sonder cannot demonstrate that the claims fall within an exemption to the TCPA; and Sonder cannot establish a prima facie case on either claim. As part of their third issue, they

argue that a defense bars Sonder's declaratory relief claim because that claim is duplicative of Sonder's other claims and seeks no additional relief.

## A.  *Standard of Review and Governing Law*

The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding) (stating that TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern"). The TCPA provides a mechanism for the early dismissal of a legal action that is based on or in response to certain statutorily defined rights. TEX. CIV. PRAC. & REM. CODE § 27.003. The basis of a legal action is determined by the plaintiff's allegations. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

The TCPA employs a burden-shifting framework. The party moving for dismissal bears the initial burden to demonstrate that the legal action is based on or in response to the party's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b)(1). Each of these rights are defined in the TCPA. *Id.* § 27.001(2)–(4). The party seeking dismissal must demonstrate that the legal action is "factually predicated" on conduct

that falls within the scope of the right of free speech, right of association, or right to petition as statutorily defined. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 428–29 (Tex. App.—Dallas 2019, pet. denied); *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 85 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied).

Even if the legal action is based on or in response to the movant's exercise of a right protected under the TCPA, the trial court must deny the motion to dismiss if the claimant establishes the applicability of a statutory exemption. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (stating that if statutory exemption applies, movant cannot invoke TCPA's protections); *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.) ("If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action."). In ruling on the motion, the trial court may consider the pleadings, evidence that could be considered in a summary judgment proceeding, and affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE § 27.006(a).

We review de novo a trial court's ruling denying a TCPA motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017,

41

no pet.). We view the evidence in the light most favorable to the nonmovant. *Dolcefino*, 540 S.W.3d at 199; *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We must construe the TCPA liberally to effectuate its purpose and intent fully. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

## B.   *Applicability of TCPA*

### 1.   **Sonder's claim for declaratory relief**

In its original petition, Sonder alleged that both Choudhri and Parker were involved in the negotiation of the leases, with Parker signing three of the leases as the authorized representative of Jetall, 1001 WL, and BDFI. Parker did not sign the leases in his individual capacity, he did not execute a personal guaranty with respect to any of the leases, and none of the leases lists either Parker or Choudhri as parties to the lease. Choudhri did not sign any of the leases.

During negotiations for the leases, Choudhri allegedly represented to Sonder that the Landlords "had completed buildouts of entire office floors in four weeks" and he estimated that "converting the space would take three to four months at most." Sonder also alleged that, after the parties executed the leases and Sonder attempted to obtain information concerning the progress of construction, Choudhri and Parker "attempted to placate Sonder with what are now known to be falsehoods." For example, Choudhri allegedly informed Sonder that "[w]e should have our permits

any day now," but Sonder's review of City of Houston records allegedly demonstrated that the Landlords had not filed for permits "covering the entirety of Sonder's Premises" and the City did not grant final approval for any permits. Choudhri also allegedly told Sonder that Parker was "waiting on the city planning and permitting that is still pending and that is what is really driving the boat." A few months later, Choudhri allegedly informed Sonder that permits had been obtained for one of the properties.

Sonder alleged that the Landlords "never had any intention of delivering the Premises to Sonder," asserting that Choudhri, Parker, and the Landlords affirmatively misrepresented that the Landlords had clear title to two of the properties. Sonder also alleged that Choudhri and the Landlords "failed to file the requisite permits, pay the required fees, or obtain the necessary approvals from the City to perform under the Leases." "Despite failing to file for all the necessary permits, Defendants repeatedly made misrepresentations that lulled Sonder into believing that all permits were in process and forthcoming and that the buildouts of the Premises were progressing." Sonder terminated each of the leases, but the Landlords allegedly "continue[d] to contest the validity of Sonder's terminations," "rejected the validity of Sonder's Termination Notices," and "ignored Sonder's demand for the return of its security deposits."

Specifically with respect to its declaratory judgment claim, Sonder alleged:

43

An actual controversy exists concerning the Leases and the rights, status, and other legal relations under the Leases, including, without limitation, whether the Leases were rescinded and/or validly terminated by Sonder due to fraud in the inducement, material breaches, frustration of purpose, impracticability, failure of consideration, unilateral mistake of fact, and unjust enrichment.

Pursuant to Texas Civil [Practice] and Remedies Code section[s] 37.001–[.]011, Sonder seeks a judicial determination with respect to the rights of the parties under the leases, including, without limitation, whether the Leases have been rescinded and/or validly terminated. Sonder further seeks a determination of its damages in connection with the leases and its attorney's fees under sections 37.009 and 37.011 of the Texas Civil [Practice] and Remedies Code.

In its prayer for relief, Sonder sought a "declaratory judgment that the Leases have been rescinded and/or validly terminated."

The trial court denied Choudhri's and Parker's motions to dismiss Sonder's declaratory judgment claim under the TCPA. On appeal, Choudhri and Parker argue that this claim is based on or in response to their exercise of the right of free speech and their right of petition. They argue that the claim is based on statements "regarding the permit applications made with the City of Houston," which implicates a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(3), (7) (providing that "exercise of the right of free speech" means "a communication made in connection with a matter of public concern" and defining "matter of public concern" to include a statement or activity regarding "a subject of concern to the public"). Additionally, they argue that statements regarding the permitting process are "in and pertaining to" permit proceedings before the City of Houston, implicating

44

the right to petition. *See id.* § 27.001(4)(A)(vii) (providing that "exercise of the right to petition" includes communications "in or pertaining to" "a proceeding of the governing body of any political subdivision of this state").

In response, Sonder argues that Choudhri and Parker have not demonstrated that Sonder's declaratory relief claim is based on or in response to any activity protected under the TCPA. Sonder points out that the claim is partially based on fraudulent statements and omissions made during negotiations of the leases; it is not, however, based on statements about permits made after Sonder entered into the leases.

We agree with Sonder that Choudhri and Parker have not demonstrated that Sonder's declaratory relief claim is based on or in response to Choudhri's and Parker's exercise of their right of free speech or right to petition. Sonder's declaratory relief claim seeks a declaration concerning the rights of the parties under the leases, including whether Sonder rescinded or validly terminated the leases "due to fraud in the inducement, material breaches, frustration of purpose, impracticability, failure of consideration, unilateral mistake of fact, and unjust enrichment." Neither Choudhri nor Parker, however, are parties to the leases.

Although Parker signed three of the four leases, he did so in his capacity as the "authorized representative" of three of the Landlords. Because Parker clearly indicated that he was signing in a representative capacity, and not on his own behalf,

45

he is not personally liable as a party to the leases.[5] *Roe v. Ladymon*, 318 S.W.3d 502, 515–16 (Tex. App.—Dallas 2010, no pet.); *Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ("[T]he general rule is that when an agent contracts for the benefit of a disclosed principal, the agent is not liable on the contracts he makes."); RESTATEMENT (SECOND) OF AGENCY § 320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."). The record does not indicate that Parker signed a personal guaranty for the leases and thus became liable under the leases in that manner. *See Jamshed v. McLane Express Inc.*, 449 S.W.3d 871, 877 (Tex. App.—El Paso 2014, no pet.) ("A guaranty creates a secondary obligation under which the guarantor promises to

---

[5]     In their appellate brief, the Landlords state that Choudhri, Zaheer, and Parker were "personal representatives" of the Landlords and were therefore "parties to the Lease under its own language." The Landlords cite to a provision of the leases stating that "[t]he provisions of this Lease shall be binding upon and inure to the benefit of Landlord and Tenant, respectively, and to their respective heirs, personal representatives, successors, and assigns . . . ." However, Parker and Zaheer signed the leases as an "authorized representative" or "authorized agent" of the respective Landlords, not as a "personal representative." The term "personal representative" is typically used in probate proceedings and refers to the personal representative of an estate, not to a corporate representative signing a contract on behalf of an entity. *See* TEX. EST. CODE § 22.031(a) (stating that terms "representative" and "personal representative" include executor, independent executor, administrator, independent administrator, temporary administrator, and successors to executors or administrators). We therefore do not agree that Choudhri, Zaheer, and Parker were "personal representatives" of the Landlords who became parties to the leases.

answer for the debt of another and may be called upon to perform once the primary obligor fails to perform."). Choudhri did not sign the leases in any capacity.

Instead, the only parties to the leases were Sonder and the respective Landlords. Sonder seeks declaratory relief to determine "the rights, status, and other legal relations" under the leases, including whether Sonder had validly rescinded or terminated the leases. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a) (providing that person interested under written contract "may have determined any question of construction or validity" arising under contract and may "obtain a declaration of rights, status, or other legal relations thereunder"). This claim seeks only to determine the status of the leases and the rights of Sonder and the Landlords under the leases; Choudhri's and Parker's rights are not implicated by this claim.[6]

Nothing in Sonder's declaratory relief claim seeks to limit Choudhri's and Parker's right of free speech or right of petition. *See, e.g.*, *Choudhri v. Lee*, No. 01-20-00098-CV, 2020 WL 4689204, at *3 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, pet. denied) (mem. op.) (rejecting argument that declaratory judgment action seeking to construe dispute resolution agreement implicated defendant's right to petition in part because action sought "a determination of the legal principles that

---

[6]     In addition to its claim for declaratory relief, Sonder also asserted a breach of contract claim. Sonder asserted this claim solely against the Landlords and argued that the Landlords were liable "for breach of contract damages . . . for defaulting on each of the Leases."

the parties should apply in resolving their various legal disputes" and did not seek to limit defendant's right to petition or otherwise participate in government); *Dolcefino*, 540 S.W.3d at 200 (noting that declaratory judgment action sought to determine plaintiff's obligations under Business Organizations Code and did not seek to limit defendant's right to speak freely); *see also* TEX. CIV. PRAC. & REM. CODE § 27.011(a) (providing that TCPA "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case or common law or rule provisions").

We conclude that Choudhri and Parker have not demonstrated that Sonder's claim for declaratory relief is based on or in response to their right of free speech or right to petition. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001(3), (4), 27.005(b)(1). We hold that the trial court did not err by denying Choudhri's and Parker's motions to dismiss this claim under the TCPA.

### 2. Sonder's claim for civil conspiracy

Sonder also asserted claims against Choudhri and Parker for fraudulent inducement, fraud by nondisclosure, and "common law fraud and string-along fraud." These claims were based on alleged affirmative misrepresentations concerning the Landlords' ownership of the properties, the Landlords' ability and intent to fulfill their lease obligations, the Landlords' ability to "complete buildouts" of the properties, "the status of plans and permitting," and construction progress for

48

the properties. Choudhri and Parker did not move to dismiss these claims under the TCPA.

Sonder also asserted a claim for civil conspiracy and alleged:

On information and belief, Defendants conspired to mislead Sonder with respect to their true intentions with respect to the Leases, and understood and agreed that Defendants would deceive and defraud Sonder and illegally convert its security deposits. On information and belief, each of the Defendants knew, or should have known, that Landlords had neither the ability nor the intent to fulfill their obligations under the Leases.

As a direct and proximate result of Defendants' conspiracy, Sonder has suffered millions of dollars of damages.

Choudhri and Parker moved to dismiss this claim.

To recover on a claim for civil conspiracy, a plaintiff must establish: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). A defendant's liability for civil conspiracy "depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Civil conspiracy is therefore not an independent tort; instead, it is a derivative tort that

"requires an underlying tort that has caused damages." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019); *Tilton*, 925 S.W.2d at 681.

The TCPA expressly provides that it does not apply to certain legal actions. One of these exemptions provides that the TCPA does not apply to "a legal action based on a common law fraud claim." TEX. CIV. PRAC. & REM. CODE § 27.010(a)(12). The Tyler Court of Appeals has held that this exemption is not so limited that it exempts "only common law fraud claims." *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 282 (Tex. App.—Tyler 2021, pet. denied). Instead, the plain language of the exemption "states that the TCPA does not apply to a legal action *based on* a common law fraud claim." *Id.* Thus, when a plaintiff's cause of action, as pleaded, requires proof of common law fraud as part of its elements, the claim is "based on a common law fraud claim" and is exempt from the TCPA. *Id.* In *Baylor Scott & White*, the underlying tort for the plaintiff's civil conspiracy claim was fraud, a claim that was exempt from the TCPA. *Id.* at 282, 284. The Tyler Court therefore held that because the basis for the plaintiff's "derivative tort of conspiracy is fraud," the conspiracy claim was based on a common law fraud claim and was also exempt from the TCPA. *Id.* at 284.

Sonder urges us to follow the Tyler Court's reasoning in *Baylor Scott & White* and conclude that because the tort underlying its civil conspiracy claim, as pleaded,

50

was common law fraud, the conspiracy claim is "based on common law fraud" and falls within the common law fraud exception to the TCPA. We agree.

In its original petition, Sonder pleaded three fraud claims, each of which are a type of common law fraud: common law fraud itself, fraudulent inducement, and fraud by nondisclosure. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) ("Fraudulent inducement is a species of common-law fraud that shares the same basic elements . . . ."); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) ("Fraud by non-disclosure is simply a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts."). Each of these claims was predicated on allegations that the Landlords and the Individual Defendants had misrepresented the Landlords' ownership of two properties and the Landlords' willingness and ability to perform their obligations under the leases.

Sonder's civil conspiracy claim alleged that the defendants "conspired to mislead Sonder with respect to their true intentions with respect to the Leases, and understood and agreed that Defendants would deceive and defraud Sonder and illegally convert its security deposits." Sonder alleged that each defendant "knew, or should have known, that Landlords had neither the ability nor the intent to fulfill their obligations under the Leases." We agree with Sonder that this derivative claim is based on the underlying tort of common law fraud, as well as on fraudulent

51

inducement or fraud by nondisclosure, which are specific types of common law fraud. *See Agar Corp.*, 580 S.W.3d at 142 (stating that civil conspiracy is derivative tort, not independent tort); *Tilton*, 925 S.W.2d at 681 (same).

It follows that because Sonder's civil conspiracy claim is "based on a common law fraud claim," it falls within the common-law-fraud exemption, and the TCPA does not apply to this claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(a)(12); *Baylor Scott & White*, 633 S.W.3d at 282–83 (reasoning that plain language of exemption is broader than exempting only common law fraud claims, but also includes claims based on common law fraud, and therefore plaintiff's derivative civil conspiracy claim, which was based on underlying tort of fraud, also fell within exemption). Consequently, we hold that the trial court did not err by denying Choudhri's and Parker's motions to dismiss Sonder's civil conspiracy claim. *See Harper*, 562 S.W.3d at 11 (stating that if statutory exemption applies, movant cannot invoke TCPA's protections); *Morrison*, 578 S.W.3d at 680 (same).

## Conclusion

We reverse the trial court's order denying the Landlords' motion to compel arbitration, and we remand to the trial court for entry of an order compelling the parties to arbitrate and staying the underlying proceedings pending completion of the arbitration. We affirm the trial court's order denying Choudhri's and Parker's TCPA motions to dismiss.

April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.